## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERISA S. FOLEY,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 3:04-0670** |
| **v.** | **:** | **(CONABOY, D.J.)** |
| | | **(MANNION, M.J.)** |
| **JO ANNE B. BARNHART,** | **:** | |
| **Commissioner of Social** | | |
| **Security Administration,** | **:** | |
| **Defendant** | **:** | |

## <u>REPORT AND RECOMMENDATION</u>

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Social Security Disability Insurance Benefits, ("DIB"), under Title II of the Social Security Act, ("Act").  42 U.S.C. §§ 401-433.

## I. Procedural Background

By way of background, the plaintiff filed her application for benefits on September 30, 1999, in which she alleged that she had become disabled on September 3, 1998 due to irritable bowel syndrome, Lyme disease fibrositis, panic attacks, and fatigue.  (TR. 14).  After her claim was denied initially, (TR. 85-89), the plaintiff's application eventually came on for a hearing before an administrative law judge, ("ALJ"), on January 3, 2001.  At that initial hearing, plaintiff was advised of her right to counsel.  She waived her right to counsel.

In addition to the plaintiff's testimony, the ALJ heard the testimony of plaintiff's husband, and Sean Hannah, a vocational expert.  (TR. 34-84).  On February 2, 2001, the ALJ issued an unfavorable decision.  (TR. 11-25).  Following the Appeals Council's denial for review, the plaintiff filed a complaint in the United States District Court for the Middle District of Pennsylvania under Civil Action No. 1:01-1027.  (TR. 428-447) .  In a report issued by the Honorable J. Andrew Smyser, it was recommended that "this appeal be decided in favor of the defendant."  (TR. 443).  In a Memorandum and Order, which adopted in part and denied in part the recommendation, the Honorable Sylvia H. Rambo, directed that the action be remanded to the Commissioner of Social Security for further administrative action in conformity with the court's memorandum issued on April 24, 2002.  (TR.  445-447).  The Appeals Council, acting on the order of the district court, directed that the ALJ hold a supplemental hearing. (TR. 448-449).  That hearing was held on October 21, 2002.  At this hearing, the plaintiff was represented by the same counsel who now represents plaintiff in the current action.  Testimony was heard from the plaintiff, as well as from Calvin Anderson, a vocational expert[1].  (TR. 385-427).

In her supplemental decision, the ALJ found that the plaintiff met the nondisability requirements for a period of disability and Disability Insurance

---

[1]At the hearing the ALJ noted that, in terms of the vocational testimony, additional testimony was not required.  However, a new ruling required the vocational expert to offer some statement about the consistency of his testimony compared to the <u>Dictionary of Occupational Titles</u>.  Such a statement was neither required nor made at the first hearing.

2

Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through September 30, 2002; the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; the plaintiff had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b); those medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulations No. 4; the ALJ found that the plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the ALJ's decision; the ALJ carefully considered all of the medical opinions in the record regarding the severity of the plaintiff's impairments (20 C.F.R. § 404.1527); the plaintiff had the following residual functional capacity[2]: to lift and carry 10 pounds occasionally and five pounds frequently.  She could sit for six out of eight hours and stand and walk no more than two out of eight hours.  The plaintiff could not perform repetitive tasks for hours on end and needs a variety of activities for her hands and fingers.  She was able to perform tasks that require low to moderate concentration skills.  She thus had the residual functional capacity for a range

---

[2]Residual functional capacity is defined as follows:
*Your residual functional capacity.*
(a) General.  Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations.  20 C.F.R. § 404.1545(a).

of unskilled sedentary work[3]; the plaintiff was unable to perform any of her past relevant work (20 C.F.R. § 404.1565); the plaintiff was a "younger individual" (20 C.F.R. § 104.1563); the plaintiff had a high school equivalent education" (20 C.F.R. § 404.1564); the plaintiff had no transferable skills from any past relevant work and/or transferability of skills was not an issue in this case; the plaintiff had the residual functional capacity to perform a significant range of sedentary work (20 C.F.R. § 416.967); although the plaintiff's exertional limitations did not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.21 as a framework for decision-making, there were a significant number of jobs in the national economy (regional economy of Northeastern Pennsylvania and Pennsylvania state economy) that she could have performed. Examples of such jobs included work as a surveillance monitor (200 jobs regionally and 4000 in the state), machine tender (400 jobs regionally and 4000 in the state) and inspector (200 jobs regionally and 2000 in the state); the plaintiff was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(f)).  (TR. 376-377).

Following plaintiff's request for review of the ALJ's supplemental

---

[3]Sedentary work is defined as:  involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

decision, the Appeals Council concluded that there was no basis upon which to assume jurisdiction of the plaintiff's action. (TR. 348-351). Thus, the ALJ's supplemental decision stood as the final decision of the Commissioner.

Currently pending before the court is the plaintiff's appeal of the supplemental decision of the Commissioner of Social Security filed on March 29, 2004. (Doc. No. 1).

## II. Disability Determination Process

A five step process is required to determine if an applicant is disabled for purposes of social security disability insurance. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work. See 20 CFR § 404. 1520.

The instant action was ultimately decided at the fifth step of the process, when the ALJ determined that considering the plaintiff's age, educational background, work experience, and residual functional capacity, plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" was reached within the framework of Medical-Vocational Rule 202.21. (TR. 376).

At issue is whether there exists substantial evidence to support the ALJ's determination.

## III.  Evidence of Record

The plaintiff was born on September 27, 1953 and was 49 years old at the time of the Commissioner's final decision dated January 27, 2003.  (TR. 211, 229, 370).   She obtained her GED and her past work involved employment as a bookkeeper and cashier.  (TR. 211, 229, 247, 370, 421-22). She alleges that she became disabled on September 3, 1998, due to multiple impairments.

The medical evidence of record indicates that the plaintiff has fibromyalgia, thoracic outlet syndrome (managed with medications) and depression.  In her most recent decision, the ALJ incorporated the summary of the earlier medical evidence and testimony from the initial hearing by reference.  The record indicates that the plaintiff has a history of irritable bowel symdrome, but records from Dr. Richard Moccia dated October, 1999, show that her symptoms were improved with medication.  (TR. 328).  Dr. Alfred Becker, the plaintiff's treating rheumatologist, diagnosed her with fibromylagia.  The plaintiff complained of joint pain and had a positive Lyme disease test in March of 1999.  (TR. 257).  ANA[4]  Testing was negative and

_____

[4]ANA is defined as an abbreviation for antinuclear antibody.  Spellman's Medical Dictionary, 66 (27th Ed. 2000).

6

subsequent testing revealed a negative Lyme disease test.  (TR. 313-14).  A lumbrosacral MRI showed only minimal degenerative disc disease and mild bulging discs causing some bilateral foraminal impingement.  (TR. 267).

The plaintiff had a consultative examination in December of 1999 with Dr. G. Gupta.  (TR. 268-71).  She complained that she could not walk long distances because of back, thigh, hip, knee and leg pain.  (TR. 269).  She stated that she gets tired by 1 p.m. and is clumsy and forgetful.  (TR. 268).  She was taking Ultram for pain and Effexor for depression but she told Dr. Gupta that her depression was better.  (TR. 269).  On examination, Dr. Gupta reported that the plaintiff was of average build; Her blood pressure was 150/100; He also noted that she was quite talkative.  Id.

Treatment notes from Dr. Becker reflect that the plaintiff has made continued complaints of numerous non-specific musculoskeletal symptoms and also alleged depression.  He prescribed Effexor for her, noting in January of 2000 that her condition had improved.  (TR. 311).  The plaintiff reported that she was feeling better in February of 2000.  (TR. 310).  Dr. Becker's treatment notes from April and July of 2000 also note improvement in depression.  (TR. 308).

Dr. Becker made several medication changes and, in July, 2002, added Neurontin. (TR.306). On follow up visits in October, 2000, the plaintiff reported that she was unable to tolerate the Neutontin and preferred not to increase her Effexor.  On examination, Dr. Becker noted no objective findings.  (TR.

7

343).  Repeat ANA testing was once again negative.  (TR. 345).

In October of 2002, Dr. Becker reported that he saw the plaintiff on average only every six months.  (TR. 482).  He stated that the plaintiff reported chronic fatigue and nonspecific musculoskeletal symptoms of muscle and joint pain compatible with fibromyalgia, but "without objective inflammatory findings."  Id.  He opined that she was incapable of even low stress jobs.  Dr. Becker has recommended counseling to the plaintiff and she has consistently refused his recommendation.  (TR. 481).  At the October, 2002 visit Dr. Becker noted that the plaintiff had no new medical or social changes since her last visit, with a similar notation in November of 2001.  Id. He again recommended counseling to the plaintiff and again she refused. The plaintiff had numerous subjective complaints of burning in her hands and feet, but no objective inflammatory evidence was discernible.  (TR. 480).  In June of 2002, Dr. Becker stated that the plaintiff was not doing well "subjectively." (TR. 476).  He again recommended counseling for depression and she again refused.  Id.  There were no new medical or social changes noted at that time.

Most recently, in November of 2002, the plaintiff attended a consultative examination with Dr. A. Patel.  (TR. 499-503).  Dr. Patel diagnosed a depressive disorder (NOS) and noted no psychotic thought process, hallucinations, suicidal ideations or homicidal ideations.  (TR. 501).  He found the plaintiff to be future oriented with a good memory with no major memory

8

problems. Id. She had fair insight and judgment. Id. Dr. Patel observed that the plaintiff's affect was appropriate and her speech was clear, coherent, well-balanced and without looseness of association. Id. She was alert, well-oriented to time, place and person, and appropriately dressed. (TR. 500).

Dr. Patel opined that the plaintiff had good to fair abilities to make occupational adjustments, except for an inability to deal with work stresses. (TR. 502). He also opined that she had fair to good abilities to maintain personal-social adjustments. (TR. 503).

During the supplemental hearing on this matter, the plaintiff alleged that her condition had worsened since the last hearing on this matter. (TR. 394). She stated that she suffered from more stress and her head had recently begun hurting her. Id. She continued taking Effexor for depression, but did not pursue any counseling because she found herself too "stubborn" for it. (TR. 396-97). She did activities of daily living with the help of her 12 year old daughter since her older child left for college in September of 2002. (TR. 398). She had pain medications and muscle relaxers but said she could not take them or she would become "addicted." (TR. 400). Her doctor refused her request for a wheelchair. Id.

## IV.  Discussion

In support of her appeal, plaintiff presents several arguments. The plaintiff initially asserts that evidence does not support the ALJ's determination

of the plaintiff's residual functional capacity. (Doc. 8, p.10). Next, she argues that the vocational expert's testimony does not support the ALJ's determination that the plaintiff was not disabled. Id. Finally, the plaintiff alleges that the ALJ failed to develop the record as to whether the plaintiff's impairments met or equaled an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

**A.   *WHETHER THE EVIDENCE SUPPORTS THE ALJ'S DETERMINATION OF THE PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY.***

The Court must review the ALJ's decision regarding the Plaintiff's residual functional capacity with the deference required of the substantial evidence standard of review. See Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).  As the Burns Court stated, "the ALJ nonetheless must have evaluated all relevant evidence, Fargnoli v. Massanari, 247 F.3d 34, 40-41 (3d Cir. 2001), and explained his reasons for rejecting any such evidence. Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  He also must have given Burns' [plaintiff's] subjective complaints "serious consideration," Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993), and made specific findings of fact, including credibility, as to Burns' [plaintiff's] residual functional capacity.  Burnett, 220 F.3d at 120; see also Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)." Id.

In Burnett, the Court of Appeals for the Third Circuit stated, "in making

a residual functional capacity determination, the ALJ must consider all evidence before him...although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence...in the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored. Id. At 21. (Internal citations and quotations omitted).

The plaintiff argues that the ALJ's rationale is not supported by the record and that she rejected Dr. Becker's opinion for the wrong reasons. Dr. Becker was the plaintiff's treating physician and she argues that the ALJ erroneously rejected his opinion that, in addition to musculoskeletal pain and severe chronic fatigue, the plaintiff's fibromyalgia caused depression, difficulty concentrating and attending, and inability to tolerate work stress. (TR. 482-83, Doc. 8, p.11). The defendant maintains that the plaintiff's reliance on Dr. Becker's opinion was misplaced for several reasons, all of which will be discussed at length below. (Doc. 11, p.12).

In order to be entitled controlling weight, a treating physician's opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record. 20 C.F.R. §404.1527(d)(2).

In Jones v. Sullivan, 954 F.2d 125 (3d Cir. 1991), the court held that, in the absence of contradictory medical evidence, an administrative law judge

11

must accept the medical judgement of a treating physician.  However, the court also noted that these opinions need not be accepted where they are conclusory and unsupported by the medical evidence or where the opinions are contradicted by the opinions of other physicians, including state agency physicians, who reviewed the findings of the treating physicians and concluded that these findings do not reveal a condition that would preclude gainful employment.

In Williams v. Sullivan, 970 F.2d 1178 (3d Cir. 1992), the court noted that while the administrative law judge may not base a decision upon his own interpretations of the significance of medical data, this does not prevent the administrative law judge from weighing medical reports against an internal contradiction and other contradictory medical evidence.

As discussed above, in October, 2002, Dr. Becker opined that the plaintiff was incapable of even low stress jobs.  The ALJ did not accord this opinion substantial weight "as it is not supported by the medical evidence of record, and his opinion that the plaintiff is incapable of even low stress jobs appears to be based solely upon her statements."  (TR. 373).  The plaintiff argues that the ALJ's reasoning in rejecting this opinion is flawed because one reason the ALJ provided for finding the plaintiff not credible about her problems with stress and concentration was that she never reported them to Dr. Becker.  (TR. 374).Therefore, the plaintiff argues, Dr. Becker could not have based his judgment about her limitations solely upon her statements

since he was not aware of them.  (TR. 373-74).

Although a treating physician's opinion is to be awarded due deference, an ALJ is not bound by a treating physician's opinion.  Here, the ALJ's decision suggests a flaw in her reasoning.  However, regardless of what Dr. Becker's opinions were based on, the objective evidence in the record does not support Dr. Becker's conclusion that the plaintiff could not sustain even a low stress job.

Dr. Becker diagnosed the plaintiff with fibromyalgia.  However in Tsarelka v. Secretary of Health and Human Services, the First Circuit held that the mere presence of fibromyalgia does not entitle a claimant to disability benefits.  842 F.2d 529, 534 (1st Cir. 1988).  An impairment, such as fibromyalgia, must be accompanied by functional limitations severe enough to preclude all substantial gainful activity.  Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991).  One of the principal symptoms of fibromyalgia are multiple trigger points.  A patient must have at least eleven of eighteen trigger points to be properly diagnosed with fibromyalgia.  See, Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996).  The plaintiff merely states that she was diagnosed with fibromyalgia, but does not reference any evidence suggesting that she had the requisite number of trigger points.  In fact, Dr. Becker examined the plaintiff on approximately fourteen occasions during the relevant time period, yet he only reported trigger point pain on 2 occasions.  (TR. 267, 308-10, 343-47).

13

The plaintiff maintains that no treatments worked for her, however she has failed to follow through on treatment options.  Dr. Becker repeatedly recommended that the plaintiff undergo counseling for her depression and the plaintiff repeatedly refused to consider such options.  She stated that she was "too stubborn, opinionated" and that she did not think that there was anything a psychiatrist could do for her.  (TR. 409).  The plaintiff has prescriptions for pain medication, but she does not take them as directed because, as she testified, she does not want to get "addicted" to them[5].  (TR. 400).  Despite her refusal to follow treatment recommendations, the plaintiff asked her doctor to order a wheelchair for her, but he refused her request.

The plaintiff suggests that she refused counseling as a result of her depression.  Relying on <u>Van Nguyen v. Chater</u>, the plaintiff argues that "a person suffering from depression may not be able to recognize and accept the need for treatment."  100 F.3d 1462, 1465 (9th Cir. 1996).  Here, however, the plaintiff explicitly stated that she was depressed and was able to explain what she believed her depression stemmed from. (TR. 399). She also reported that she used to wake up thinking she was going to die, but that the Effexor controlled those thoughts.  (TR. 396-97).  At the hearing, when asked why she did not follow Dr. Becker's recommendation to seek counseling, she  testified

---

[5]The plaintiff testified as follows:
plaintiff:     I can't take them [pain medicine] on a regular basis, I will become addicted to them.
ALJ:          and that's what Dr. Becker told you?
plaintiff:     no, that's what I know.

that she was too stubborn for it.  (TR. 409).  Furthermore, the panic attacks that the plaintiff suffered from only occurred when she drove and are now controlled by medication.  (TR. 500).

The fact that the plaintiff is capable of identifying her depression as well as it's causes and effects indicates that the plaintiff recognizes her mental limitations.  She acknowledges that medication controls her depression and panic attacks.  She is also aware that counseling is an available treatment, but she simply chooses to treat her depression with medication and not counseling.

The plaintiff argues that Dr. Becker's judgment was supported by opinions of the other doctors who examined the plaintiff.  Dr. Patel opined that the plaintiff had fair to no ability to deal with work stress; a fair ability to interact with supervisors, function independently, maintain attention or concentration, relate predictably in social situations, demonstrate reliability; and a good ability to follow work rules, relate to co-workers, deal with the public, use judgment, maintain personal appearance and behave in an emotionally stable manner.  (TR. 502-03).  Relying on Cruse v. Department of Health and Human Services, the plaintiff asserts that the "fair" limitations Dr. Patel reported mean "seriously limited" and represent a "marked" level of limitation.  49 F.3d 614, 618-19 (10th Cir. 1995), 20 C.F.R. pt. 404, subpt, P, app.1 §12.00(c).

We find that reliance on Cruse is improper here.  Unlike the situation in

15

Cruse, Dr. Patel's assessment was not on a social security form which expressly defined the meaning of "fair." Id at 618.  Indeed, Cruse indicates that absent the definition on the form, which the Court found misleading, a finding of a fair ability "would imply no disabling impairment." Id.

The plaintiff also argues that Dr. Gupta's recognition that the plaintiff's physical complaints were "psychogenic" failed to undermine Dr. Becker's judgment. (TR. 270). Dr. Gupta also indicated that the plaintiff had a normal range of motion in her joints, cervical spine and lumbar spine. (TR. 270). She had no peripheral edema and pedal pulses were present.  (TR. 270). Examination of the limbs showed no motor cerebellar, extrapyramidal or sensory abnormalities, and her muscle power was 5/5. Id. The repetitive and fine movements of her fingers were normal, as was her gait. Id. Dr. Gupta reviewed the MRI of the lumbar spine, finding that it was essentially normal and showed no significant abnormalities.  The examination did not mention any trigger points. (TR. 268).  Dr. Becker's opinion is also not supported by the plaintiff's own testimony regarding her daily activities.  The plaintiff can drive, perform personal care activities, go grocery shopping, perform housework at her own pace, exercise  and do most other activities of daily living. (TR. 398, 406, 411, 417). She has the ability to concentrate on television programs.

Finally, the plaintiff argues that the ALJ did not understand the nature of fibromyalgia and asserts that "if the ALJ questioned the supportability of Dr.

16

Becker's judgment, she should have recontacted him." Social Security Ruling 96-2p and 20 C.F.R. § 404.1412(e)(1).   In the alternative, the plaintiff suggests that the ALJ could have sought additional information by obtaining an opinion from a medical expert.  The plaintiff's argument is misplaced.

The ALJ did not reject Dr. Becker's opinion because she lacked an understanding of fibromyalgia.  She rejected Dr. Becker's opinion because it was not well supported by and was inconsistent with other substantial evidence of record.  Good cause exists for an ALJ to reject a treating physician's opinion when it is unsupported by objective medical evidence or is merely conclusory.  Borroughs v. Massanari, 156 F. Supp. 2d 1350, 1365 (NDGA. 2001).

The strongest evidence that the plaintiff is incapable of working on a full time basis is the plaintiff's own subjective complaints.  The severity of her impairments, as she alleges, is not supported by the objective evidence in the record.  Substantial evidence exists in the record to support the ALJ's finding that the plaintiff retains the RFC for a range of unskilled sedentary work.

**B.**   ***WHETHER THE VOCATIONAL EXPERT'S TESTIMONY SUPPORTS THE ALJ'S DECISION THAT THE PLAINTIFF IS NOT DISABLED.***

The plaintiff argues that the hypothetical question posed to the vocational expert ("VE") did not encompass all of the limitations that the ALJ found to exist.  The Third Circuit has held, with respect to hypothetical

questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002), the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert*s response is not considered substantial evidence." (citations omitted).

When an ALJ's hypothetical question to the vocational expert sets forth the plaintiff's limitations as supported by the record, the vocational expert's testimony may be accepted as substantial evidence in support of the ALJ's determination that the plaintiff is not disabled. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, the ALJ found that the plaintiff maintained the RFC to perform tasks that require "low to moderate concentration skills or one to two step tasks." (TR. 374).  The plaintiff argues that when presenting the hypothetical questions to the VE, the ALJ did not encompass the limitations on the

18

plaintiff's ability that the ALJ found to exist.  When presenting the plaintiff's limitations to the VE, the ALJ stated, "this individual, because of her perception of pain, needs to be doing work that requires only low to moderate concentration." (TR. 422). The plaintiff argues that the ALJ should have included her finding that the plaintiff had at least a moderate limitation on her ability to maintain attention, persistence and pace.

The Commissioner does not dispute plaintiff's assertion that the ability to maintain concentration, persistence or pace are important considerations. However, we agree with the defendant that the hypothetical question posed to the VE sufficiently accommodated the ALJ's finding that the plaintiff was able to perform work that "require[d] low to moderate skills or one to two step jobs." (TR. 374).  The ALJ questioned the VE as to whether a significant number of jobs existed that would accommodate plaintiff's need for work that required only low to moderate concentration.  (TR. 422).

With respect to the Plaintiff's ability to maintain persistence or pace, in her decision the ALJ stated that, "[n]othing in the record support[ed] a conclusion that [plaintiff] could not sustain unskilled work activities involving one to two step tasks on a regular and continuing basis." (TR. 374).  As discussed above, we find that the ALJ's RFC determination was supported by substantial evidence.  Accordingly, the ALJ's hypothetical question posed to the VE sufficiently accommodated plaintiff's limitations which were supported by the record.

19

The plaintiff also argues that the ALJ erred by failing to include any limitations on the plaintiff's ability to tolerate work stresses.  However, the ALJ expressly rejected those opinions that indicated that the plaintiff was unable to tolerate work stresses.  (TR. 373-74).  We agree with the ALJ that an inability to tolerate work stress is not supported by the evidence.  Therefore, the ALJ was not required to include such limitations in the hypothetical questions.  Accordingly, the VE's testimony supports the ALJ's finding that the plaintiff is not disabled.

### C.   *WHETHER THE ALJ FULLY DEVELOPED THE RECORD AS TO WHETHER THE PLAINTIFF MET OR EQUALED ONE OF THE LISTED IMPAIRMENTS.*

The plaintiff argues that the ALJ erred by not obtaining the updated opinion of a medical expert to make a decision of medical equivalence.  She argues that Social Security Ruling 96-6p requires the ALJ to seek such an opinion where additional evidence is received that may change the State Agency consultant's finding of no medical equivalence.  The defendant argues that the record was fully developed and no further evidence was necessary for the ALJ to make a reasonable determination as to whether plaintiff was disabled within the meaning of the Social Security Act.

The plaintiff suggests that SSR 96-6p requires the ALJ to have a medical expert review the updated record to determine whether the plaintiff's impairments equaled one of the impairments listed in Appendix 1, Subpart P,

Regulations No. 4 ("Listings").  However, SSR 96-6p leaves the decision of whether an additional medical expert review was necessary within the ALJ's discretion[6].

The Disability Determination Service ("DDS") consultants found that the plaintiff retained the RFC to work at a medium exertional level[7].  The ALJ found that the record did not completely support an ability to perform medium level work, but stated that, while outdated, the assessments support the ALJ's finding that the plaintiff is capable of some range of work.  As discussed at length above, the ALJ's RFC determination is supported by substantial evidence in the record.  Therefore, additional evidence does not contradict the DDS assessments in that they support a finding that the plaintiff is capable of

---

[6]  SSR 96-6p provides, in relevant part:

. . . an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert [FN2] in the following circumstances:

a) When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
 b) When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

[7]Medium work involves lifting more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.  20 C.F.R. § 404.1567(c).

working. Accordingly, it was proper for the ALJ, in her discretion, to determine that the updated opinion of a medical expert was not necessary.

The regulations provide, "if your impairment is not listed, we will consider the listed impairment to decide whether your impairment is medically equal." 20 C.F.R. § 404.1526(a). "The determination of whether the plaintiff's impairment(s) is medically equal must be based on medical evidence that is supported by acceptable techniques." 20 C.F.R § 404.1526(b). Under Social Security Regulations, for a disability claimant to qualify for supplemental security income benefits by showing that his unlisted impairment or combination of impairments is "equivalent" to a listed impairment, he must present medical findings equal in severity to *all* criteria for the one most similar listed impairment. Sullivan v. Zebley, 493 U.S. 521, 531 3d Cir. 1990). (Emphasis in original). In making a determination, as to whether a claimant's impairment meets or equals one of the listed impairments, the ALJ may not merely state a summary conclusion that the claimant's impairments did not meet or equal any of the relevant listed impairments; she must identify any listed impairments, discuss the evidence, and explain her reasoning. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000).

The plaintiff argues that the combined impact of her fibromyalgia and depression limited her daily activities, social functioning and concentration. (Doc. 8, p.23).   Therefore, she asserts that her impairments could medically

equal Listing 12.04.  Additionally, she maintains that the pain, fatigue, and ambulatory limitations that she experienced could be seen as equivalent in severity to the type of limitations recognized by the Listings.  The plaintiff argues that without an updated opinion by a medical expert, she had no realistic opportunity to establish medical equivalence.

The ALJ noted that the medical evidence indicates that the plaintiff has fibromyalgia, thoracic outlet syndrome and depression.  She determined that while the plaintiff's impairments are severe within the meaning of the Regulations, they are not severe enough to meet or medically equal one of the listed impairments.

In making this determination, the ALJ stated that she specifically reviewed section 1.04 (disorders of the spine), 11.01 et seq (neurological impairments) and 12.04 (affective disorders) of the Listings.  She found that the record does not establish that the plaintiff had the requisite findings for any of these listings for a twelve month period.  Specifically, she noted that the medical record does not contain required findings regarding reflex loss, sensory loss, straight leg raising in both the seated and reclined positions; nor does the record indicate that the plaintiff is unable to ambulate effectively.  Therefore, the ALJ concluded, the plaintiff did not meet or equal Listing 1.04 because the objective findings in the record are not of the severity required to establish listing severity.

Regarding the neurological listings, the ALJ found that the plaintiff did

not meet or equal any of the severity requirements of these as she does not have a disorganization of motor function or any of the ailments contained in Listing 11.04.  In addition, the ALJ found that the plaintiff has no objective "inflammatory" findings that correspond to her allegations of joint pain,  (TR. 476-84) and her ANA tests have been negative (TR. 395).  The ALJ concluded that the plaintiff did not meet any of the neurological listings.

The ALJ also considered Listing 12.04 and determined that the plaintiff had no marked limitation of function and only moderate difficulty with concentration, persistence and pace.  The ALJ also found that the plaintiff has no limitations in activities of her daily living or difficulty with social functioning due to her mental limitations. She experienced no episodes of decompensation; nor does the record demonstrate that she was unable to function outside of her home without an accompanying support system.  Her mental condition had been stable and she repeatedly refused counseling, as recommended by her treating physician.  Accordingly, the ALJ found that the plaintiff's impairments did not meet or equal Listing 12.04.

The ALJ met the requirements of the regulations by identifying the relevant listings, discussing the evidence of record and explaining her reasoning.  Substantial evidence supports the ALJ's finding that the plaintiff's impairments did not meet or equal any of the listed impairments.  Additionally, the ALJ did not err in determining that it was not necessary to obtain an updated opinion from a medical expert.

**V. Conclusion**

On the basis of the foregoing, **IT IS RECOMMENDED** that the

plaintiff's appeal of the decision of the Commissioner (Doc. No. 1), be

**DENIED**.


s/ Malachy E. Mannion

MALACHY E. MANNION
United States Magistrate Judge


Dated:   March 11, 2005
O:\shared\REPORTS\2004 Reports\04-0670.wpd

25