UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELISA S. FOLEY,                    :
                                   :
          Plaintiff,               :CIVIL ACTION NO. 3:04-CV-0670
                                   :
          v.                       :
                                   :(JUDGE CONABOY)
JO ANNE B. BARNHART,               :(Magistrate Judge Mannion)
Commissioner of Social             :
Security Administration,           :
                                   :
          Defendant.               :

---

**MEMORANDUM AND ORDER**

Here we consider Magistrate Judge Malachy E. Mannion's Report
and Recommendation in which he recommends we deny Plaintiff's
appeal of Defendant's denial of her application for Disability
Insurance Benefits ("DIB"). (Doc. 13.) Plaintiff has filed
objections to the Report and Recommendation, (Doc. 14), and
Defendant responded to Plaintiff's objections, (Doc. 15).
Therefore, this matter is ripe for disposition.

Because Plaintiff filed objections, we will make a <u>de novo</u>
determination regarding the matters to which Plaintiff has
objected.  <u>See</u> 28 U.S.C. § 636(b)(1)(C).  After a thorough
examination of the record, we conclude that this matter must be
remanded to the Commissioner for further consideration.

**I. Background**

On March 29, 2004, Plaintiff filed her appeal of the
Commissioner's final decision denying her DIB under Title VII of

1

the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.  (Doc. 1.)

She filed her application for DIB on September 30, 1999, alleging

that she had become disabled on September 3, 1998, due to irritable

bowel syndrome, Lyme disease, fibrositis, panic attacks and

fatigue.

     This is the second time the denial of Plaintiff's application

has been before the Court.  On June 8, 2001, she filed Civil Action

No. 1:CV-01-1027, appealing the Commissioner's denial of benefits.

In that action the Magistrate Judge recommended Plaintiff's appeal

be denied, but the Honorable Sylvia H. Rambo decided that the case

should be remanded to the Commissioner for further consideration.

Foley v. Barnhart, Civ. No. 1:CV-01-1027, slip op. (M.D. Pa. Apr.

24, 2002).  The basis of the remand was the Court's conclusion that

the Administrative Law Judge ("ALJ") did not identify the specific

listing or combination thereof which she had considered in arriving

at her determination that Plaintiff was not disabled.  Id. at 3.

     Upon remand, the Appeals Council directed that the ALJ hold a

supplemental hearing.  (R. at 448-49.)  The hearing was held on

October 21, 2002.  (R. at 385.)  Testimony was heard from Plaintiff

and from Calvin Anderson, a vocational expert.  (Id.)  At the

hearing, Plaintiff was represented by the attorney who represents

her in the current appeal.  (Id.)

     The ALJ issued a supplemental decision on January 27, 2003.

(R. at 366-378.)  She considered Plaintiff's fibromyalgia, thoracic

outlet syndrome and depression severe.  (R. at 371.)  However, the ALJ found that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy.  (R. at 376.)

Following the ALJ's unfavorable decision on January 27, 2003, Plaintiff requested review of the hearing decision on February 10, 2003.  (R. at 361.)  In correspondence date stamped January 27, 2004, the Appeals Council considered the reasons Plaintiff disagreed with the ALJ's decision and found no reason to assume jurisdiction.  (R. at 348-49.)  Therefore, the ALJ's supplemental decision became the final decision of the Commissioner.

Plaintiff filed her appeal in this Court on March 29, 2004.  (Doc. 1.)  The matter was referred to Magistrate Judge Mannion who issued his Report and Recommendation on March 11, 2005, in which he recommends the Court deny Plaintiff's appeal.  (Doc. 13.)  Plaintiff filed objections on March 22, 2005, (Doc. 14), and Defendant responded to Plaintiff's objections on April 5, 2005, (Doc. 15).

Plaintiff objects to the Magistrate Judge's Report and Recommendation on three grounds.  First, Plaintiff objects on the basis that the Magistrate Judge found that the ALJ properly evaluated the opinions of her treating physician and the consulting psychiatrist.  (Doc. 14 at 2-7.)  Second, the Magistrate Judge did not properly consider whether the ALJ's hypothetical to the vocational expert adequately stated Plaintiff's limitations.  (<u>Id.</u>

at 7-9.)  Third, the Magistrate Judge found that the ALJ did not err in not obtaining an updated medical opinion at Step Three of the disability evaluation process.  (Id. 14 at 9-12.)

## II.  Disability Determination

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences

---

[1]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

4

preclude him from doing any other sort of work.  20 C.F.R. §
416.920(a)-(f); see Sullivan v. Zebley, 493 U.S. 521, 110 S. Ct.
885, 888-89 (1990).

The disability determination involves shifting burdens of
proof.  The initial burden rests with the claimant to demonstrate
that he or she is unable to engage in his or her past relevant
work.  If the claimant satisfies this burden, then the Commissioner
must show that jobs exist in the national economy that a person
with the claimant's abilities, age, education, and work experience
can perform.  Mason v. Shalala, 993 F.2d 1058, 1064 (3d Cir. 1993).

In this case, the ALJ found "[t]he medical evidence indicates
that the claimant has fibromyalgia, thoracic outlet syndrome
(managed with medication) and depression, impairments that are
severe within the meaning of the Regulations but not severe enough
to medically equal one of the impairments listed."  (R. at 371.)
In keeping with Judge Rambo's remand Order, the ALJ specifically
cited the sections reviewed and the reasons Plaintiff did not meet
the requirements of those sections.  (Id.)

Regarding Plaintiff's thoracic outlet syndrome, the ALJ looked
at Section 1.04 (disorders of the spine) and concluded that the
medical record does not contain the required findings.  (Id.)

The ALJ looked at the neurological listings (sections 11.01 et
seq.) and concluded that Plaintiff did not meet any of the severity
requirements.  In addition, the ALJ found that Plaintiff did not

have "objective 'inflammatory' findings that correspond to her allegations of joint pain (Exhibit B-20F) and her ANA tests have been negative (Exhibit B-19F)."  (R. at 371.)

Regarding Plaintiff's affective disorder, the ALJ looked at section 12.04 and found

> the claimant has no marked limitation of function and only moderate difficulty with concentration, persistence and pace.  She has no limitations in activities of daily living or difficulty with social functioning based on her mental impairments.  She has had no episodes of decompensation; nor does the record demonstrate that she is unable to function outside her home without an accompanying support system.  Her condition has been stable and she refuses to have any counseling, as repeatedly recommended by her treating physician.  Thus, I find that the claimant's impairments do not meet or equal Listing 12.04.

(R. at 371.)

The ALJ also noted that Plaintiff alleges she has chronic fatigue syndrome but the condition has not been established as a severe impairment.  "With regard to such a condition, the record does not contain any thing [sic] other that the claimant's assertion that she suffers from the condition.  Uncorroborated symptoms alone do not establish an impairment, 20 CFR 404.1520." (Id.)

Concluding that no single impairment or combination of impairments were severe enough to equal listing severity, the ALJ went on to consider Plaintiff's residual functional capacity.  (R. at 372.)  Incorporating by reference the earlier medical record and

hearing testimony from the initial hearing, the ALJ reviewed this evidence as well as that more recently submitted.  The more recent medical evidence included the post January 2001-2002 reports of Dr. Alfred Becker, Plaintiff's treating rheumatologist, and a report from Dr. A. Patel, a psychiatrist who performed a consultative examination of Plaintiff in November 2002.  (<u>Id.</u> at 373.) Regarding the more recent (2002) evidence, the ALJ stated the following:

> In October of 2002, Dr. Becker reported that he sees the claimant on average only every six months (Exhibit B-20F, Page 7).  He stated that the claimant reports chronic fatigue and non-specific muscoloskeletal symptoms of muscle and joint pain compatible with fibromyalgia, but "without objective inflammatory findings" (Exhibit B-20F, Page 7).  He opined that she was incapable of even low stress jobs.  I do not accord this opinion substantial weight as it is not supported by the medical evidence of record, and his opinion that the claimant is incapable of even low stress jobs appears to be based solely upon her statements.  Dr. Becker has recommended counseling to the claimant and she has consistently refused his recommendation, as noted in May of 2001 (Exhibit B-20F, page 6).  At the October 2002 visit Dr. Becker noted that the claimant had no new medical or social changes since her last visit, with a similar notation in November of 2001 (Exhibit B-20F, page 5).  He again recommended counseling to the claimant and she again refused.  The claimant had numerous subjective complaints of burning in her hands and feet, but no objective inflammatory evidence was discernable (Exhibit B-20F, page 5).  In June of 2002, Dr. Becker stated that the claimant was not doing well "subjectively" (Exhibit B-20F, page 1).  He again recommended counseling for depression and she again refused (Exhibit B-20F, page 1).  There were no new

medical or social changes at this time.

Most recently, in November of 2002, the
claimant attended a consultative examination
with Dr. A. Patel (Exhibit B-24F).  Dr. Patel
diagnosed a depressive disorder (NOS) and noted
no psychotic thought process, hallucinations,
suicidal ideations or homicidal ideations
(Exhibit B-24F, page 3).  He found the claimant
to be future oriented with a good memory with
no major memory problems.  She had fair insight
and fair judgment.  Dr. Patel observed that the
claimant's affect was appropriate and her
speech was clear, coherent, well-balanced and
without looseness of association.  She was
alert, well-oriented to time, place and person,
and appropriately dressed (Exhibit B-24F, page
2).

Dr. Patel opined that the claimant had
good to fair abilities to make occupational
adjustments, except for an inability to deal
with work stresses (Exhibit B-24F, page 4).  He
also opined that she had fair to good abilities
to maintain personal-social adjustments
(Exhibit B-24F, page 5).  Dr. Patel's
assessment regarding the claimant's supposed
inability to deal with work stresses (Exhibit
B-24F, page 4), is not supported by his own
evaluation notes and observances.

(R. at 373.)

The ALJ then reviewed Plaintiff's hearing testimony, including
her allegation that her condition had worsened since the last
hearing.  (R. at 374.)  (The original hearing was held on January
3, 2001. (R. at 34.))  The ALJ found that Plaintiff's testimony
could not "be deemed credible or consistent with the record as a
whole; at least to the extent that total disability is alleged."
(R. at 374.)

There is little recent evidence of treatment in

the record since the earlier decision of
February of 2001.  The consultative examination
discussion does not match with the ratings or
assessments given regarding the ability to deal
with work stresses in particular, and I cannot
accord those portions of the examination
significant weight.  The assessment by the
claimant's treating physician at Exhibit B-20F
is not supported by any independent findings and
observations.  He recommends treatment for the
claimant's depression; however, the claimant's
refusal to consider such an option belies the
severity of the depression that she alleges.
She has pain medications but does not take them
as directed.  I do not see any physical findings
or test results in the record that can be used
to establish listing severity, as described
above, no matter what Listing is evaluated:
orthopedic, neurological or mental.

     The claimant is able to perform activities
of daily living and to maintain social
functioning without any limitations.  Although
she alleges difficulty with concentration,
persistence and pace, she has never relayed any
limitations in this area to her physicians.
Nothing in this record supports a conclusion
that the claimant could not sustain unskilled
work activities involving one to two step tasks
on a regular and continuing basis.  She has had
no episodes of decompensation.  The claimant's
treating physicians appear to accept her
statements that no treatments work for her, but
objective support in the medical record is
sorely lacking.  The claimant is able to drive,
perform personal care activities, go grocery
shopping on her own, and perform housework at
her own pace and most other activities of daily
living.  She at least has the ability to
concentrate on television programs.  Thus, I
find that the claimant's impairments do not
preclude her from all work activities.

     Based on the above, I find that the
claimant retains the residual functional
capacity to lift and carry 10 pounds
occasionally and five pounds frequently.  She
can sit for six out of eight hours and stand and

walk no more than two out of eight hours.  She
is able to perform tasks that require low to
moderate concentration skills or one to two step
jobs.  She has the residual functional capacity
for a range of sedentary work.

In making these determinations, I have
considered the opinions of the Disability
Determination Service (DDS) consultants, in
accordance with the Social Security Ruling 96-
6p.  The DDS consultants opined that the
claimant has the residual functional capacity
for work at the medium exertional level (Exhibit
5F and 7F).  DDS also opined that the claimant
has no severe mental impairment (Exhibit 6F and
8F).  The complete record that is before me
cannot completely support these assessments, but
the assessments while outdated so suggest that
the claimant is capable of some range of work.

(R. at 374-75.)

The ALJ then looked at whether Plaintiff could perform her

past relevant work as a bookkeeper and cashier: work that is

considered unskilled to skilled and at the sedentary to light

exertional level.  (R. at 375.)  The ALJ determined that Plaintiff

could not perform her past relevant work because she deemed her to

be limited to work at the unskilled sedentary exertional level.

(Id.)

Finally, the ALJ found that Plaintiff's ability to perform

"all or substantially all of the requirements of sedentary work is

impeded by additional exertional and/or non-exertional

limitations."  (R. at 370.)  Therefore, the ALJ used a vocational

expert to help determine whether there are a significant number of

jobs in the national economy Plaintiff could perform given her

10

residual functional capacity and other vocational factors.  (<u>Id.</u>)

Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff was not disabled because she had the residual functional capacity for work that exists in significant numbers in the national economy.  (<u>Id.</u>)

### III. Discussion

**A.    <u>STANDARD OF REVIEW</u>**

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).  A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Plummer</u>, 186 F.3d at 427 (quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions. <u>Hartranft</u>, 181 F.3d at 360 (citing <u>Monsour Medical Center v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . .").

**B.    PLAINTIFF'S OBJECTIONS**

As noted above, Plaintiff objects to the Magistrate Judge's
Report and Recommendation on three grounds: 1) the Magistrate Judge
found that the ALJ properly evaluated the opinions of her treating
physician and the consulting psychiatrist, (Doc. 14 at 2-7); 2) the
Magistrate Judge did not properly consider whether the ALJ's
hypothetical to the vocational expert adequately stated Plaintiff's
limitations, (id. at 7-9); and 3) the Magistrate Judge found that
the ALJ did not err in not obtaining an updated medical opinion,
(id. 14 at 9-12).

**1.    *EVALUATION OF THE MEDICAL EVIDENCE***

Plaintiff argues that the ALJ did not properly evaluate the
medical evidence, specifically her rejection of the opinions of
Plaintiff's treating physician, Dr. Becker, and consulting
psychiatrist, Dr. Patel.  (Doc. 14 at 2.)  Plaintiff maintains that
the Magistrate Judge should not have accepted the ALJ's analysis of
the medical evidence and her finding regarding Plaintiff's residual
functional capacity ("RFC"), particularly in light of the fact the
Magistrate Judge recognized the ALJ's reasoning was flawed.  (Id.)
The flawed reasoning "stems from the ALJ rejecting Dr. Becker's
opinion that Ms. Foley could not tolerate work stress by
speculating the opinion appeared to be based "solely upon [Ms.
Foley's] statements" (R. 373), while later rejecting the extent of

12

Ms. Foley's concentration, persistence, and pace limitations as not credible because she had not reported them to Dr. Becker (R. 374). Ms. Foley testified she had never voiced those complaints to Dr. Becker (R. 414)."  (Doc. 14 n.1.)

In support of her position, Plaintiff contends her treating physician's opinion is entitled to greater weight than accorded by the ALJ and, given the ALJ's confusion about the basis of Dr. Becker's opinion, she had the obligation to "'make every reasonable effort to recontact the source for clarification of the reasons of the opinion.'"  (Doc. 14 at 4 (quoting Social Security Ruling 96-5p).)  Plaintiff asserts the need to recontact Dr. Becker is also appropriate because the nature of her primary impairment, fibromyalgia, means that objective findings will not exist for her diagnosis.  (Id. at 4-5.)

Similarly, Plaintiff maintains that the ALJ had the duty to recontact Dr. Patel - the ALJ could not have known what the terms on Dr. Patel's assessment meant because they were not defined therein.  (Doc. 14 at 5-6.)  Plaintiff quotes 20 C.F.R. § 404.1519p(b) in support of her position: "if a report by a consultative examiner such as Dr. Patel 'is inadequate or incomplete, [the ALJ] *will* contact the medical source who performed the consultative examination, give an explanation of [the] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report.'"  (R. at 6

(emphasis added by Plaintiff).)

Finally Plaintiff argues that the strongest evidence in her case is not her own subjective complaints as the Magistrate Judge found.  (Doc. 14 at 6 (citing Doc. 13 at 17).)  Rather, she maintains that Dr. Becker's and Dr. Patel's reports are the strongest evidence - opinions which were not controverted by any physician to which the ALJ accorded greater weight.  (<u>Id.</u>)

Defendant argues that Plaintiff's reliance on Dr. Becker's opinion is misplaced for several reasons.  (Doc. 15 at 2.)  First, more than a diagnosis of a condition is required to show disability - "an impairment must be accompanied by functional limitations severe enough to preclude all substantial gainful activity."  (<u>Id.</u> (citations omitted).)  Second, as required by 20 C.F.R. § 404.1527(d)(2), "Dr. Becker's conclusory opinion was not well supported by medically acceptable clinical and laboratory diagnostic techniques, and was inconsistent with other substantial evidence, including his own clinical notes."  (Doc. 15 at 2.)  Third, Dr. Becker reported that Plaintiff complained only of occasional panic attacks or depression and that Plaintiff reported that her depression was improved.  (<u>Id.</u> at 3.)  Fourth, Dr. Becker's opinion was inconsistent with other physicians' opinions, including that of Dr. Gupta, a neurologist and psychologist, who reported that many of Plaintiff's objective complaints of pain were psychogenic.  (<u>Id.</u>) Fifth, the ALJ was not confused by the terms

14

used in Dr. Patel's assessment.  (Id. at 4.)

Finally, Defendant cites the following bases upon which Dr. Becker's opinion was inconsistent with other evidence of record: 1) Plaintiff alleged disability as of September 3, 1998, but sought little treatment until March 1999; 2) Plaintiff took no pain medication and did not participate in a chronic pain program; and 3) Plaintiff engaged in daily activities such as driving, child care, cooking, housework, reading, playing computer games, using a computer, watching television, walking without an assistive device, doing Yoga exercises, shopping, taking care of her daily personal needs and attending events.  (Doc. 15 at 6 (citations to the record omitted).)

We conclude that the ALJ did not properly consider the evidence of record in determining Plaintiff's RFC and, for this reason, we cannot say that the ALJ's decision is based on substantial evidence.  First and foremost, the ALJ did not properly consider Dr. Becker's opinion.  Second, we cannot tell whether the ALJ properly evaluated Dr. Patel's assessment.  Third, the ALJ did not properly evaluate Plaintiff's subjective complaints of pain.

**a. *Treating Physician's Opinion***

The ALJ's opinion is not based on substantial evidence because she did not properly evaluate the treating physician's opinion.

The "treating physician rule," is codified at 20 C.F.R. 404.1527(d)(2), and is widely accepted in the Third Circuit.

15

Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993); see also Dorf v.
Brown, 794 F.2d 896 (3d Cir. 1986).  The regulation addresses the
weight to be given a treating physician's opinion: "If we find that
a treating source's opinion on the issue(s) of the nature and
severity of your impairment(s) is well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in your case, we
will give it controlling weight."  20 C.F.R. § 416.927(d)(2).[2]  "A

_____

[2] 20 C.F.R. 404.1527(d)(2) states in relevant part:

> Generally, we give more weight to opinions
> from your treating sources, since these
> sources are likely to be the medical
> professionals most able to provide a detailed,
> longitudinal picture of your medical
> impairment(s) and may bring a unique
> perspective to the medical evidence that
> cannot be obtained from the objective medical
> findings alone or from reports of individual
> examinations, such as consultative
> examinations or brief hospitalizations. If we
> find that a treating source's opinion on the
> issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically
> acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in your case
> record, we will give it controlling weight.
> When we do not give the treating source's
> opinion controlling weight, we apply the
> factors listed in paragraphs (d)(2)(I) and
> (d)(2)(ii) of this section, as well as the
> factors in paragraphs (d)(3) through (d)(6) of
> this section in determining the weight to give
> the opinion. We will always give good reasons
> in our notice of determination or decision for
> the weight we give your treating source's opinion.

Id.  The factors considered when the treating source's opinion is

cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted).  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317 (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988)).  When confronted with contradictory medical evidence, the ALJ may choose whom to credit, but in these instances there is an acute need for the ALJ to explain the reasoning behind conclusions.  Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  The Fargnoli court noted that the appeals court will vacate or remand a case where such an explanation is not present.  Id.

Furthermore, "[t]he Commissioner is encouraged to give more

---

not given controlling weight include the following: 1) the duration of the treating relationship; 2) the nature and extent of the relationship; 3) the supportability of the opinion in light of the relevant medical evidence and reasoning; 4) consistency of proffered reasons with the remainder of the record, 5) expertise of the medical source; and 6) other relevant factors.  20 C.F.R. § 404.1527(d)2-6.

17

weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." <u>Kelley v. Callahan</u>, 133 F.3d 583, 589 (8th Cir. 1998) (citing <u>Metz v. Shalala</u>, 49 F.3d 374, 377 (8th Cir. 1995)). "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." <u>Id.</u>

"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under criteria set forth in 20 C.F.R. § 404,1527(d)(2)." <u>Newton v. Apfel</u>, 209 F.3d 448, 453 (5th Cir. 2000). The <u>Newton</u> court also concluded

> if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

<u>Id.</u>

Here the ALJ discounted Dr. Becker's assessment of Plaintiff's condition (including the finding that she could not tolerate even low stress jobs) because it is "not supported by any independent findings and observations." (R. at 374.) The problem with looking

for independent findings and observations is that fibromylagia is a disease which is notable for its lack of objective diagnostic techniques.

Fibromyalgia, previously called fibrositis, is "a rheumative disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004). It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue." Brosnahan v. Barnhart, 336 F.3d 671, 672 n.1 (8th Cir. 2003). The disease is "poorly-understood within much of the medical community [and] is diagnosed entirely on the basis of patients' reports and other symptoms." Benecke, 379 F.3d at 590. "In the past, many believed fibromyalgia was just a psychological aberration because it has no visible signs and could not be confirmed in laboratory tests." Earl J. Brewer, M.D., & Kathy Cochran Angel, The Arthritis Sourcebook (1998), <http://mywebmd.com/content/article/1680.51250. Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of 18 specified tender points on the body." Id.; Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003). These tender points are called "trigger points." Id. All points may not be painful at all times in every person. Id. The pain may vary in intensity

according to the time of day, weather, activity level, stress, and sleep patterns. <u>Id.</u> Other symptoms often associated with the pain include the following: sleep disturbance, depression, daytime tiredness, headaches, alternating diarrhea and constipation, numbness and tingling in the hands and feet, feelings of weakness, memory difficulties and dizziness. Cleveland Clinic Department of Rheumatic and Immunologic Diseases, <u>Arthrits: Fibromyalgia</u> (2004), at <u>http://my.webmd.com/content/article/78/95601.</u> "Patients with fibromyalgia are symptomatically made worse by stress." <u>Yeager v. Reliance Standard Life Ins. Co.</u>, 88 F.3d 376, 378 n.1 (6th Cir. 1996); <u>see also</u> Mayo Foundation for Medical Education and Research, <u>Fibromyalgia: Signs and Symptoms</u>, at <u>http://www.mayoclinic.com/invoke.cfm?id=DS00079</u> & section=2.

In <u>Green-Younger</u>, the court noted: "a growing number of courts, including our own, have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" <u>Green-Younger</u>, 335 F.3d at 108 (quoting <u>Preston v. Sec. of Heatlh and Human Servs.</u>, 854 F.2d 815, 818 (6th Cir. 1988) and listing cases from other circuits). Joint swelling is not a symptom of fibromyalgia and, therefore, its absence is no indication that the plaintiff's condition is not disabling. <u>Sarchet v. Chater</u>, 78 F.3d 305, 306 (7th Cir. 1996).

Turning now to the instant appeal, we find Dr. Becker's treatment notes somewhat sparse and his assessment potentially

contradictory.  However, given the nature of fibromyalgia and the chronology of the medical evidence of record, the ALJ does not identify valid contradictory evidence which would allow him to attribute no significant weight to Dr. Becker's opinion without seeking clarification or additional evidence.  See, Newton, 209 F3d at 453.

First, as discussed above, the ALJ cannot rely on the lack of objective evidence within Dr. Becker's notes and assessment because fibromyalgia does not exhibit objective symptoms nor can it be diagnosed with objective laboratory findings.  Given the nature of the disease, Dr. Becker may properly rely on Plaintiff's subjective complaints.[3]

---

[3]  It is difficult to determine from Dr. Becker's treatment notes what subjective complaints he was aware of.  Because he may have been aware of much of what Plaintiff described to the ALJ, we recount here just some of Plaintiff's testimony.

At the hearing, Plaintiff alleged pain in her wrists, ankles, legs, hands and right heel, although at the time, Dr. Becker was not yet aware of the right heel pain.  (R. at 394-95.)  She testified that when she goes to a store for no more than half an hour, she needs to have a grocery-type basket to lean on and she walks "at a pace slower than death." (R. at 401.)  When asked if she could stay longer than half an hour, she responded that she could not.  (Id.)  When asked if she could rest for ten minutes and then do more shopping, she responded that she could not: "No, I have to give it at least an hour.  Once I aggravate whatever part of my body is really hurting, this will be all the way up my legs to my hip and my lower back.  Sitting down, I will feel better if I sit for a few minutes but the minute I get up and start to walk again, it will be upon me within seconds." (R. at 402.)  Plaintiff stated that she could sit for fifteen minutes or so - the best position is lying in bed.  (Id.)

The ALJ asked Plaintiff about her daily activities but some of her response is missing from the record.  (See R. at 402.)  See infra p. 31 n.9.  In response to a later question, Plaintiff

Regarding Plaintiff's fibromyalgia, the only medical evidence other than that of Dr. Becker cited by the ALJ is a consultative examination performed by Dr. G. Gupta in December of 1999.[4]   The ALJ notes that Dr. Gupta, a physician whose primary specialty is neurology and secondary specialty is internal medicine, (R. at 322), did not mention any trigger points.[5]   (R. at 372.)

Dr. Gupta's report cannot be considered substantial evidence

---

testified that she dusts, sometimes vacuums and "washes a couple of dishes," she has no social activities and she does not go out other than to the grocery store or doctors.  (R. at 406.)  In response to another question (content unknown because of the gap in the record), Plaintiff stated: "I don't know how to describe it to you. It's like I would just want to fall down where I was but I force myself to continue until I get to someplace where I can sit down. That's how bad it is."  (R. at 408.)

In response to a question from her attorney about how she felt after vacuuming or dusting, Plaintiff stated that she felt "lousy" because she was in pain and she does not necessarily finish the activity, she just stops.  (R. at 409.)  When she stops, she often lies down and sleeps for two to three hours.  (R. at 410.)

[4]   The ALJ stated that she considered the opinions of the Disability Determination Service ("DDS") consultants in arriving at her RFC assessment although the assessments were "outdated."  (R. at 375 (citing R. at 272-305.)  The referenced consultative evaluations took place in January and March of 2000.  (R. at 272-305.)  We do not discuss the other medical opinions cited in Defendant's Response to Plaintiff's Objections, (Doc. 15 at 3), because they are not reviewed by the ALJ in her decision.  Further, these opinions were rendered during 1999.  As noted above, the ALJ determined evidence from 2000 to be "outdated."

[5]   In Defendant's responsive brief, she cites the fact that Dr. Gupta reported that many of Plaintiff's subjective complaints were psychogenic.  We do not consider this contradictory medical evidence because it was not cited by the ALJ and Defendant cannot now make arguments on the ALJ's behalf which the ALJ herself did not make.  See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

for several reasons.  The examination was performed in December of 1999 and the ALJ recognized that assessments from 2000 are "outdated."  (R. at 375.)  This is underscored by the fact that Dr. Becker opined that Plaintiff was becoming "progressively worse" in May and November of 2001 and June of 2002.  (R. at 476, 480-81.) Further, as the opinion of a consulting physician who does not specialize in rheumatology, Dr. Gupta's report is entitled to less weight than that of the treating specialist.  See Kelley, 133 F.3d at 589.

As discussed above, the only somewhat objective diagnostic technique for fibromyalgia is the identification of eleven of eighteen trigger points, all of which may not be present at all times.  In support of the ALJ's determination, Defendant cites the fact that the medical records do not indicate that Plaintiff had the requisite number of trigger points.  (Doc. 15 at 3.)

First, we note that it is not for Defendant to make an after-the-fact argument to support the ALJ's decision.  See, e.g., Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  The analysis in Defendant's brief cannot substitute for the ALJ's analysis.  Id.  While the ALJ stated that Dr. Gupta, a consulting physician, did not mention any trigger points, the ALJ did not base her determination on trigger point findings.

Second, the trigger point evaluation is a tool used for the diagnosis of fibromyalgia.  Here, the ALJ accepted Dr. Becker's

diagnosis, finding that Plaintiff's fibromyalgia was severe: "[t]he medical evidence indicates that the claimant has fibromyalgia, thoracic outlet syndrome . . . and depression, impairments that are severe within the meaning of the regulations." (R. at 371.) It is contradictory to accept that Plaintiff has a severe condition and also argue that Plaintiff was improperly diagnosed with that condition.

Third, to the extent that the objective evidence does not show Plaintiff exhibited eleven of eighteen trigger points, Dr. Becker's assessment may be seen as internally inconsistent. In the "Fibromyalgia Interrogatory" completed on October 11, 2002, Dr. Becker answered "yes" to the question of whether his patient meets the American Rheumatology criteria for fibromyalgia, (R. at 482,), the standard which calls for eleven of eighteen trigger points. In another section of the report which sought identification of the location of tender points, Dr. Becker checked only eight sites.[6] (R. at 483.) However, this potential inconsistency cannot serve as substantial evidence because the ALJ does not rely on it as a basis for her rejection of Dr. Becker's opinion. Further, Social Security regulations and guidance do not allow a possible inconsistency alone to be the basis for a non-disability finding.

_____

[6] Because all trigger points need not be present all the time, the lack of identification of eleven locations may not be contradictory to Dr. Becker's statement that Plaintiff met the American Rheumatology requirements.

See infra p. 28 n.8.

When we look at the ALJ's decision and the medical records as a whole, we find that no timely medical evidence contradicts Dr. Becker's opinion.[7]  Although, as discussed previously, we find Dr. Becker's records sparse and potentially contradictory, these findings do not support a conclusion that the ALJ properly considered the treating physician's opinion or based her decision on substantial evidence.  The ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  Morales, 225 F.3d at 317.

On the current record, it appears that the ALJ has run afoul of this rule.  The ALJ found the DDS assessments from 2000 "outdated" yet speculated that they "suggest the claimant is capable of some range of work."  (R. at 375.)  Although it is not clear from her report, to the extent the ALJ relied upon Dr. Gupta's 1999 evaluation of Plaintiff, by her own assertion regarding the DDS assessments, the report cannot be considered

---

[7]  We do not consider Dr. Patel's evaluation of Plaintiff contradictory of Dr. Becker's opinion.  First, both doctors agree that Plaintiff cannot handle work stresses.  (R. at 483, 502.)  Second, to the extent that Dr. Patel's assessment supports Plaintiff's ability to make occupational, performance and personal-social adjustments, it is not contradictory to Dr. Becker's opinion.  As a psychiatrist, Dr. Patel is looking at Plaintiff's mental and emotional abilities where Dr. Becker is looking at the effects of Plaintiff's fibromyalgia and overall condition.

timely.   As the <u>Newton</u> court found, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."   <u>Newton</u>, 209 F.3d at 458.

Based on the above discussion, we are left with the question of whether the ALJ may properly discount the treating physician's opinion without "competing first-hand medical evidence."   <u>Id.</u>   We will not discuss this issue at length because we conclude that, given the state of the record here, the recognized flaw in the ALJ's analysis of Dr. Becker's opinion precludes us from finding that she properly analyzed the weight to be accorded his opinion.

Our decision that remand is required is made in light of the fact that the Magistrate Judge recognized, (Doc. 13 at 13), and Defendant does not deny, (Doc. 15 at 10), that the ALJ's reasoning was flawed regarding her assessment of Dr. Becker's opinion.

> The flaw stems from the ALJ rejecting Dr.
> Becker's opinion that Ms. Foley could not
> tolerate work stress by speculating the opinion
> appeared to be based 'solely upon [Ms. Foley's]
> statements' (R. 373), while later rejecting the
> extent of Ms. Foley's concentration,
> persistence, and pace limitations as not
> credible because she had not reported them to
> Dr. Becker (R. 374).   Ms. Foley testified she
> had never voiced those complaints to Dr. Becker
> (R. 414).

(Doc. 14 n.1.)

As noted above, Defendant does not deny that the ALJ's reasoning was flawed concerning her evaluation of Dr. Becker's

opinion.   Rather, she maintains that "[c]ourts should affirm an ALJ's decision, even when there is error, if there is 'no question that he would have reached the same result notwithstanding his initial error.'" (Doc. 15 at 10 (quoting <u>Mickles v. Shalala</u>, 29 F.3d 918 921 (4th Cir. 1994).)   As further support for her position, Defendant quotes an unpublished Third Circuit Court of Appeals decision: "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe  that the remand might lead to a different result." (<u>Id.</u> (citing <u>Lett v. Barnhart</u>, No. 02-2801 (3d Cir. Apr. 28, 2003) (quoting <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1056 (7th Cir. 1989)).)

We agree in principle with Defendants' propositions.   However, in this case we cannot say there is no question that a different result would not have been reached if the ALJ had properly analyzed the evidence.   We are not in search of a perfect opinion – we look at the ALJ's opinion to see if it is supported by substantial evidence and if it is not we have a duty to remand.   For the reasons discussed above, the ALJ did not properly consider the treating physician's opinion so we cannot say that her decision is supported by substantial evidence.   Therefore, this matter must be remanded for reconsideration of the weight to be afforded the

treating physician's opinion.[8]

## b.   *Consultative Examination and Opinion*

Plaintiff argues that the ALJ improperly considered Dr. Patel's report and his opinion that she could handle little to no work stress.  (Doc. 15 at 5-6.)  Plaintiff's argument is based on her contention that the ALJ did not understand the terms used in

---

[8]   Upon remand, this may be a case where the only way for the ALJ to determine the basis of the treating physician's opinion is to recontact Dr. Becker.  Social Security Ruling 96-5p states in pertinent part: "'[b]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicatory must make 'every reasonable effort' to recontact the source for clarification of the reasoning of the opinion.'"  Gutzman v. Apfel, 109 F. Supp. 2d 1129, 1134 (D. Neb. 2000) (quoting SSR 96-5p).
Similarly, the regulations governing the review of evidence from a treating source also suggest that more information may be needed.  20 C.F.R. § 404.1512(e) states that when the evidence from a treating source is inadequate to determine wether the claimant is disabled, the Commissioner will take certain steps to obtain additional information including recontacting the treating source.  Subsection (f) states that a consultative exam may be necessary if the needed information is not readily available from the records of the treating source or if the Commissioner is unable to seek clarification from the medical source.  20 C.F.R. § 404.1512(f).  Similarly, 20 C.F.R. § 404.1527 (c)(3) states that if medical evidence is consistent but there is insufficient evidence to decide whether the claimant is disabled or if, after weighing the evidence, the Commissioner decides a decision cannot be reached, the agency will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519.  "We will request additional existing records, recontact your treating sources or any other examining sources, ask you to undergo a consultative examination at our expense or ask you for more information."  Id.  Only "[w]hen there are inconsistencies that cannot be resolved, or when despite efforts to obtain additional evidence the evidence is not complete, we will make a determination or decision based on the evidence we have."  20 C.F.R. § 404.1527(c)(4).

the assessment.  (<u>Id.</u>)

In her report, the ALJ stated:

> Dr. Patel opined that the claimant had
> good to fair abilities to make occupational
> adjustments, except for an inability to deal
> with work stresses (Exhibits B-24F, page 4).
> He also opined that she had fair to good
> abilities to maintain personal-social
> adjustments (Exhibits B-24F, page 5).  Dr.
> Patel's assessment regarding the claimant's
> supposed inability to deal with work stresses
> (Exhibits B-24F, page 4), is not supported by
> his own evaluation notes and observances.

(R. at 373.)

Originally, Plaintiff argued that the "fair" limitations found
in Dr. Patel's report mean "seriously limited."  (Doc. 13 at 15.)
Plaintiff relied on <u>Cruse v. Dep't of Health and Human Services</u>, 49
F.3d 618, 618-19 (10th Cir. 1995) and 20 C.F.R. pt 404, subpt. P.,
app. 1 § 12.00(c), maintaining that the social security mental
assessment forms assign a meaning of "seriously limited" or
"marked" level of limitation to the term "fair."

Defendant argues that the ALJ properly assessed the form
because Dr. Patel's assessment was not on a Social Security form
which expressly defined the meaning of "fair" and absent such
explicit definition, the term would imply no disabling impairment.
(Doc. 5 (citing <u>Cruse</u>, 49 F.3d at 618).)

Here we cannot be certain that Dr. Patel's assessment is not
on a Social Security form which defines the meaning of the terms.
The record reveals that only pages two and three of the three page

form are part of the record - we do not know what information is on page one.  Therefore, upon remand, the ALJ (and Dr. Patel if necessary) is to clarify the source of the form used and the meaning of the term "fair."  Any further evaluation of Dr. Patel's assessment is to be conducted in accordance with the applicable regulations, including 20 C.F.R. § 404.1519p.

### c.    Plaintiff's Subjective Complaints

Because of the nature of fibromyalgia, specifically the fact that subjective complaints cannot be conclusively confirmed by objective tests, see, e.g., Green-Younger, 335 F.3d at 108, Plaintiff's arguments regarding the ALJ's evaluation of Dr. Becker's opinion inferentially involve the ALJ's credibility determination.

In her discussion of Plaintiff's credibility, the ALJ stated "[t]he assessment of the claimant's treating physician at Exhibit 20-F is not supported by any independent findings and observations."  (R. at 374.)   While this may be true, as discussed above, in a disability determination involving  fibromyalgia, it is error to require objective findings when the disease itself eludes such measurement.  See, e.g., Green-Younger, 335 F.3d at 108. Similarly, unverified subjective complaints consistent with the disease cannot be discredited for lack of objective evidence.  Id. Rather, a doctor's diagnosis of fibromyalgia bolsters the credibility of the plaintiff's complaints.  Id.  "In stark contrast

to the unremitting pain of which fibrositis (fibromyalgia) patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Lisa v. Secretary of the Dep't of Health and Human Services, 940 F.2d 40, 45 (2d Cir. 1991). "Because objective tests may not be able to verify a diagnosis of fibromyalgia, the reports of treating physicians, as well as the testimony of the claimant, become even more important in the calculus for making a disability determination." Perl v. Barnhart, No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. Mar. 10, 2004) (citing Green-Younger, 335 F.3d at 108).

Because remand is required for reconsideration of the weight attributed to Dr. Becker's opinion, the ALJ is to review the record regarding Plaintiff's subjective complaints, including her reported limitations of daily living activities. Although the ALJ found that Plaintiff was able to perform activities of daily living without any limitations, (R. at 374), Plaintiff testified otherwise. See supra p. 21 n.3; (R. at 398-402, 406, 408-13[9]). In undertaking her review, the ALJ must keep in mind that "a person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she

---

[9]   The hearing transcript from Plaintiff's second hearing is incomplete.  It appears that pages of the discussion of her daily activities are missing and the transcript from another hearing substituted.  (R. at 403-05, 407.)

has the functional capacity to engage in substantial gainful activity." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998).

Another issue which should be considered upon remand is the weight the ALJ attributed to Plaintiff's failure to follow prescribed treatment. In her decision, the ALJ repeatedly references Plaintiff's failure to follow treatment recommendations. (R. at 374-75.) For example, the ALJ stated that Plaintiff "does not pursue any counseling because she is "too stubborn" for it. . . . She has pain medications and muscle relaxers but said she cannot take them or she will become addicted." (R. at 374.) Regarding Plaintiff's credibility, the ALJ stated that Plaintiff's failure to go to the counseling recommended by her treating physician "belies the severity of the depression that she alleges. . . . She has pain medications but does not take them as directed." (Id.)

In cases where the plaintiff has a good reason not to take prescribed medication or follow certain treatment options, the plaintiff's credibility should not be undermined. See, e.g., Brosnahan, 336 F.3d 671, 677 (8th Cir. 2003). Here, Plaintiff not only stated that she did not want to become addicted to the pain medication, she also said that a prescribed muscle relaxer made her "all fuzzy." (R. at 398.) We do not infer that Plaintiff has good reason to refuse to follow prescribed treatment or that her failure to do so does not affect her credibility on the severity of her impairments. Rather, we want to be sure that, upon remand, the

basis of the ALJ's credibility finding is clear and is made in the context of her reassessment of Dr. Becker's opinion.

## 2. *VOCATIONAL EXPERT HYPOTHETICAL*

Plaintiff argues that the ALJ erred in that her hypothetical question to the Vocational Expert did not contain the impairments and limitations the ALJ accepted and the record supported. (Doc. 14 at 8 (citing Ramirez v. Barnhart, 372 F.3d 546, 555 (3d Cir. 2004).)

The Third Circuit Court of Appeals has explained that "[a] hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Ramirez, 372 F.3d at 552 (quoting Chrupula v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). An ALJ is not required "to submit to the vocational expert every impairment alleged by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Rather, the "*all* impairments" requirement "means that the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." Id. (citation omitted).

Rutherford also provided some guidance as to when a limitation is credibly established. Id. "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert

preclude reliance on the expert's response." <u>Id.</u> (citation
omitted).  Medically supported limitations which are contradicted
may or may not be found credible and can be credited in part.  <u>Id.</u>
Finally, asserted limitations which lack objective medical support
may be considered credible.  "In that respect an ALJ can reject
such a limitation if there is conflicting evidence in the record,
but should not reject a claimed symptom that is related to an
impairment and is consistent with the medical record simply because
there is no objective medical evidence to support it."  <u>Id.</u> (citing
Reg. § 929(c)(3)).

Plaintiff objects to the ALJ's hypothetical on two grounds.
First, the ALJ found that Plaintiff had moderate limitation on her
ability to maintain persistence and pace, but did not include these
limitations in the hypothetical.  (Doc. 13 at 7 (citing R. at
371).)  Second, the ALJ did not include any limitation on stress in
her hypothetical or decision findings.  (Doc. 13 at 9.)

Regarding persistence and pace, Plaintiff asserts that the
Third Circuit Court of Appeals has found persistence and pace are
highly relevant considerations, critical to the inquiry of whether
a person can maintain even simple work requiring low concentration.
(Doc. 14 at 8-9 (citing <u>Ramirez</u>, 372 F.3d at 554).)

Defendant maintains the ALJ posed a proper hypothetical to the
ALJ in that she "expressly stated '[n]othing in this record
support[ed] a conclusion that [Plaintiff] could not sustain

unskilled work activities involving one to two step tasks on a regular and continuing basis.'" (Doc. 15 at 7 (quoting R. at 374).) Thus, Defendant concludes the ALJ's hypothetical accommodated the limitations the ALJ found supported by the record. (_Id._)

The adequacy of the posed hypothetical is a difficult issue but, in light of relevant caselaw, the remedial nature of the Act and the fact that Defendant bears the burden at this stage of the disability determination, we conclude the ALJ should have included her finding that Plaintiff had "moderate difficulty with . . . persistence and pace." (R. at 371.) _Ramirez_ recognized that the limitation of a plaintiff's ability to do "no more than simple one to two step tasks" does not take into account deficiencies in pace. _Ramirez_, 372 F.3d at 554. "An individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time." _Id._

Although _Ramirez_ can be distinguished on the basis that the ALJ found the plaintiff _often_ suffered from deficiencies in persistence and pace, _Ramirez_, 372 F.3d at 552, we do not find the distinction dispositive. Here the ALJ posed the following limitation: "This individual, because of her perception of pain, needs to be doing work that requires only low to moderate concentration[,]" (R. at 422). Because pace and concentration are different characteristics which could have distinctly different

impacts on performance, the ALJ's hypothetical was not broad enough to include the limitations she recognized in her decision.

Therefore, we conclude that *if* upon remand the ALJ again reaches Step Five, persistence and pace limitations should be included in a vocational expert hypothetical.

Next we consider whether the ALJ should have included a stress limitation in her hypothetical to the vocational expert.  Plaintiff maintains that although the ALJ did not agree with Dr. Becker's and Dr. Patel's limitations on her ability to handle work stress, it does not follow that she had no limitations in this area.  (Doc. 14 at 9.)

We agree the ALJ should have considered some limitation in this area in her question to the vocational expert.  As explained in Hutchinson, a limitation is credibly established (and should be included in a vocational hypothetical) if it is related to an impairment and is consistent with the record.  Hutchinson, 399 F.3d at 554.  The ALJ found Plaintiff's fibromyalgia was a severe impairment.  (R. at 371.)  Stress is related to fibromyalgia in that "[p]atients with fibromyalgia are symptomatically made worse by stress."  See supra p. 20.  Plaintiff's treating physician found that she could not tolerate even low stress jobs and the consulting psychiatrist found her ability to handle work stresses "fair" or "none."  (R. at 483, 502.)  This evidence shows that a limited ability to handle stress is related to Plaintiff's impairment and

consistent with the medical record.  Therefore, according to
<u>Hutchinson</u>, it should have been included in the hypothetical.  Upon
remand, *if* the ALJ gets to Step Five of the disability
determination process, her findings regarding Plaintiff's ability
to handle workkplace stress should be incorporated into any
vocational hypothetical.

3.   ***ADDITIONAL MEDICAL EXPERT TESTIMONY TO ESTABLISH LISTING
     EQUIVALENCE***

     Plaintiff asserts that Social Security Ruling 96-6p required
the ALJ to get an updated medical opinion before ruling on Step
Three medical equivalence when her case was remanded pursuant to
Judge Rambo's order.  (Doc. 14 at 9-10.)  She maintains that
"[l]ongstanding Social Security policy requires that an opinion by
a source designated by the Commissioner on the issue of medical
equivalence 'must' be received in the record as expert opinion
evidence and given appropriate weight."  (<u>Id.</u> at 10.)

     Defendant maintains Plaintiff's reliance on this ruling is
misplaced because SSR 96-6p "provides that the ALJ must obtain an
updated medical expert opinion only '[w]hen additional medical
evidence is received that in the opinion of the ALJ . . . may
change the State agency medical or psychological consultant's
finding that the impairment(s)is not equivalent in severity to any
impairment in the Listing of Impairments.'"  (Doc. 15 at 8-9
(quoting SSR 96-6p).)

     Here the ALJ technically complied with the requirements of SSR

96-6p.  Plaintiff correctly states the policy requirement - a
requirement which was satisfied with the original DDS assessments.
(R. at 272-305.)  Judge Rambo's order to specifically identify the
listings considered did not mean that new assessments were
required.  SSR 96-6p identifies the situations in which an ALJ must
obtain an updated medical opinion.  The situation applicable to
this case is the provision cited by Defendant which makes it
mandatory for an ALJ to get an updated medical opinion *only if* the
ALJ believed the new medical evidence would change the expert's
findings that the impairments were not equivalent.  SSR 96-6p, 1996
WL 374180 (S.S.A.).  Thus, although the ALJ found the reports
outdated, it appears within her discretion to find that no new
medical opinion was required.

### IV.Conclusion

For the reasons discussed above, we conclude remand is
required.  This case shows the difficult task a court faces when
reviewing an appeal of the Commissioner's denial of benefits where
the plaintiff suffers from hard to diagnose and measure impairments
such as depression and fibromyalgia.  Complicating the situation
are the facts that Plaintiff filed her application for benefits
almost six years ago, the record for the time period when
Plaintiff's main impairment, fibromyalgia, was reportedly getting
worse is sparse, the reports that do exist are notable for their
brevity, Plaintiff has not completely followed her treating

38

physician's advice, and Defendant does not deny that the ALJ's reasoning regarding her treating physician analysis is flawed.  In this case, the ALJ wrote a detailed decision.  Unfortunately, for the reasons discussed above, we cannot conclude that her decision to deny Plaintiff benefits was based on substantial evidence.  An appropriate Order follows.

 

 

 
                                        _____

                                        RICHARD P. CONABOY
                                        United States District Judge

DATED:

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELISA S. FOLEY,                      :
                                     :
          Plaintiff,                 :CIVIL ACTION NO. 3:04-CV-0670
                                     :
          v.                         :
                                     :(JUDGE CONABOY)
JO ANNE B. BARNHART,                 :(Magistrate Judge Mannion)
Commissioner of Social               :
Security Administration,             :
                                     :
          Defendant.                 :
_____

### ORDER

     AND NOW, THIS 16th DAY OF JUNE 2005, FOR THE REASONS DISCUSSED

IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

     1.   The Magistrate Judge's Report and Recommendation, (Doc.

          13), is NOT ADOPTED;

     2.   Pursuant to the fourth sentence of 42 U.S.C. § 405(g),

          this matter is REMANDED to the Commissioner of Social

          Security for further consideration consistent with the

          accompanying Memorandum;[10]

_____

     [10]  The fourth sentence of 42 U.S.C. § 405(g) provides that
"[t]he courts shall have the power to enter, upon the pleadings and
transcripts of the record, a judgment affirming, modifying or
reversing the decision of the Commissioner of Social Security with
or without remanding the cause for a re-hearing."  Accordingly, the
Clerk of Court will be directed to enter judgment in accordance
with this Order.  See Kadelski v. Sullivan, 30 F.3d 399 (3d Cir.
1994).

3.   The Clerk of Court is directed to enter judgment in

accordance with this Order and to mark the matter in this

Court **CLOSED**.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge